**ILLINOIS CENTRAL GULF RAILROAD**

v.

**PARGAS, INC.**

**Civ. A. No. 80–691–A.**

United States District Court,
Middle Dist. of Louisiana.

Nov. 13, 1981.

**210**

Murphy J. Foster, III, Baton Rouge, La., for plaintiff.

Charles A. O'Brien, Baton Rouge, La., for defendant.

Stephen K. Conroy, Metairie, La., for Union Tank, third party defendant.

JOHN V. PARKER, Chief Judge.

This matter is before the Court on a motion for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P., filed on behalf of third party defendant, Union Tank Car Company ("Union"). The parties have orally argued the motion and it has been submitted to the Court for decision.

The main demand is an action for recovery of damages allegedly incurred by the railroad when a tank car, owned by Pargas, containing liquified petroleum gas leaked gas onto the railroad track. The railroad seeks to recover its costs and expenses in the clean-up operation and alleges that Pargas, the owner, is liable for these damages under the Association of American Railroads Interchange Rules. Pargas, while denying liability to the railroad, has filed a third party complaint against Union, alleging that the tank car in question was modified by Union under a contract with Pargas, that the defect in the car was caused by Union's defective workmanship and that Union is liable to Pargas for full indemnity for any amount which the railroad may recover from Pargas. Union has answered, denying liability and it attaches a copy of the written contract to its answer. There is no dispute concerning the provisions of the contract.

The predicate for Union's motion is a limitation of warranty clause in the agreement.

The contract is dated November 20, 1977, and it generally provides that Union agrees to convert 126 non-insulated pressure railway tank cars owned by Pargas so as to meet specifications mandated by United States Department of Transportation Regulations. The precise modification is specified, a "unit price" is fixed, a production schedule running from July 1, 1978, through

December 31, 1981, is specified, a delivery schedule to Union's plant is set forth and it is specified that Illinois law shall govern interpretation of the contract. Under the contract, Union agrees to complete modification of each tank car within a specified period and in the event that Union does not do so, "then Union shall at its option either return such car to Owner and pay to Owner the sum of $900 in respect of such car as fully liquidated damages" or hold the car for a future production run.

Paragraph seven of the agreement which is relied upon by Union, reads as follows:

"7. *Warranty.*

Union warrants that the cars will be modified in accordance with the specifications applicable to 112J 114J cars set forth in HM–144 and that the cars will be free from defects in material and workmanship. The obligation of Union under this warranty shall be limited to repairing or replacing at a repair shop selected by Union any part or parts of any of the modifications made by Union which shall within one year after completion of the modification be returned to a repair shop designated be returned to a repair shop designated for such purpose and which Union's examination shall disclose to its satisfaction to have been thus defective. THIS WARRANTY IS EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR THAT THE CARS ARE FIT FOR ANY PARTICULAR PURPOSE OR USE, AND SPECIFICALLY IN LIEU OF ALL INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES.

Union's position is that, assuming for purposes of argument that its workmanship under the contract was defective, Pargas nevertheless has no right of indemnity because the above quoted contract provision amounts to a waiver by Pargas of any warranty at all. Third party plaintiff, Pargas, advances the notion that the limitation of warranty provisions do not have the effect of shielding Union from *tort* liability or liability for its own negligence and further argues that the intent of the above quoted language is to shield Union only from damages which are incurred by Pargas itself as a result of defective workmanship, as opposed to damages which are incurred by third parties and for which Pargas may be held liable.

As noted, Union raises this issue by means of a motion for judgment on the pleadings under Rule 12(c). Since Union has attached a copy of the contract to its answer and since Pargas concedes the correctness of the copy, the Court may consider the contract, as a part of the pleadings. It is elementary that a motion for judgment on the pleadings may not be granted unless it is clearly established that no material issue of fact remains to be resolved and that the mover is entitled to judgment as a matter of law. *Beal v. Missouri Pacific Railroad*, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254 (5th Cir. 1973).

In considering a motion for judgment on the pleadings, the Court must view the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the opposing party and all well pleaded allegations in the opposing party's pleadings are assumed to be true. *National Metropolitan Bank v. U. S.*, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383 (1945); *Bass v. Hoagland*, 172 F.2d 205 (5th Cir. 1949), cert. den. 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494. Such a motion may not be granted unless it appears beyond question that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *J. M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77 (5th Cir. 1962).

As noted above, there is no dispute relative to the accuracy of the contract attached to Union's pleadings and the contract speaks for itself. Determination of the meaning of a contract clause is a matter for the Court and neither party has suggested that any evidence could be produced which would shed light upon the meaning of the above quoted warranty provision.

212

*Tokio Marine & Fire Insurance Co. Ltd. v. McDonnell Douglas Corp.*, 617 F.2d 936 (2nd Cir. 1980).

A fair reading of paragraph 7 of the contract between the parties clearly limits Union's obligations to repairing or replacing any part or parts of any modification which are defective and the clause specifically states that this warranty of repair is expressly in lieu of all other warranties "express or implied" and it specifically precludes any warranty that the cars are fit for any particular purpose or use.

The language is clear and unambiguous and it exculpates Union from any damages which may be incurred by Pargas either directly or indirectly, remote or consequential for any defective workmanship which Union may have performed except and unless the sole obligation to repair the defective part. Thus, unless there is some provision of Illinois law which prohibits the enforcement of the contract, it but remains to be applied.

The argument by Pargas that tort liability is not contemplated by the warranty provision cannot be accepted. In the first place, the third party complaint filed by Pargas is not a tort claim but it is specifically alleged to be a suit for defective workmanship under the contract. Moreover, it is clear that this contractural provision excludes liability of any sort, contractural or otherwise, except the limited obligation to repair any defective parts.

■ Our review of Illinois law convinces us that Illinois recognizes and enforces contracts containing exculpatory clauses. As noted in *Tatar v. Maxon Construction Co.*, 54 Ill.2d 64, 67, 294 N.E.2d 272, 273–74 (1973):

"... the contractual provisions involved are so varied that each must stand on its own language and little is to be gained by an attempt to analyze, distinguish or reconcile the decisions. The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions."

■ Illinois does require that all such exculpatory provisions be construed strictly against the party who seeks to limit liability and that its provisions be clear and unequivocal. *Jackson v. First National Bank*, 415 Ill. 453, 114 N.E.2d 721 (1953); *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, 395 Ill. 429, 70 N.E.2d 604 (1946).

■ Viewing this agreement as a whole, it is apparent that this is a commercial transaction between parties of equal bargaining power who agreed to an allocation of the risks that might flow from the execution of the contract. Surely the parties were knowledgeable that the railway cars in question were to carry liquified petroleum gas and similar products and certainly were aware that a leak in such a tank car resulting from defective workmanship could cause damage to third person. The parties chose to enter a contract for precisely stipulated modifications and for a unit price per job over a period of several years. The contract is clear that Union intended to limit its liability for damages relating to such repairs and that it has done so. There are no allegations of fraud, mistake or error and under Illinois law, the courts will enforce contractual clauses exempting a party from liability for its own negligence or defective workmanship if it is clear that it was the intent of the parties to shift the risks of loss. *Rutter v. Arlington Park Jockey Club*, 510 F.2d 1065 (7th Cir. 1975); *Berwind Corp. v. Litton Industries, Inc.*, 532 F.2d 1 (7th Cir. 1976); *Contract Buyers League v. F & F Investments*, 300 F.Supp. 210 (affirmed *Baker v. F & F Investment*, 420 F.2d 1191 (7th Cir. 1970), *cert. den.* 400 U.S. 821, 91 S.Ct. 42, 27 L.Ed.2d 49; *Gates Rubber Co. v. USM Corp.*, 351 F.Supp. 329 (D.C.Ill.1972).

Here we find no prohibition in Illinois law against the enforcement of such a contract, the provisions of the contract are clear and, applying Illinois law, they must be enforced.

For the foregoing reasons, the motion for judgment on the pleadings on behalf of

Union Tank Car Company is hereby GRANTED and the third party complaint will be DISMISSED.